FRANCIS STOKES *vs.* LOUIS F. DETRICK and WILLIAM
L. BRADLEY.    HANSON H. HAINES *vs.* SAME.

*Corporations—Transfer of Property of a Corporation—Rat-
ification by Stockholders—Acceptance of Deed—Exception.*

The stockholders of a corporation, having had knowledge of the
action of its directors when they directed all its property to be
sold and conveyed to another corporation, and not having acted
upon that knowledge at the proper time, must be held to have
ratified the execution and delivery of the deed.

A corporation organized to succeed a corporation whose charter
was about to expire, purchased certain property for $100,000;
the terms being the payment of $20,000, in cash, the execution
of a mortgage for $27,000, and the assumption of existing mort-
gages amounting to $53,000. A deed was received, a mortgage
for $27,000 was executed, and the payment of the existing mort-
gages for $53,000, was assumed. The cash payment of $20,000,
however, was not paid by the grantee, which was without busi-
ness and without money, but the old corporation paid the two
vendors $10,000 in cash, gave them its note for $5,000, which it
afterwards paid, and in lieu of the remaining $5,000, they re-
spectively accepted a certificate of the preferred stock of the new
corporation, which, at that time, it was supposed would soon
succeed the old corporation. Immediately after the purchase of
the property by the new corporation, the old corporation went
into possession. Subsequently it was resolved by the board of
directors of the old corporation that inasmuch as its charter
was about to expire it should be amended, and it was accord-
ingly amended so as to continue its existence for a definite
period; and its president, who was also president of the new
corporation, was authorized to purchase the property of the
latter for $100,000. On the same day the new corporation,
by its board of directors, passed a resolution that it would be
for the interest of both companies that a sale and conveyance of
the property should be made to the old corporation at the price
at which it had been purchased by the new corporation. Sub-
sequently the directors of the old corporation reported to its

Stokes and Haines *vs.* Detrick and Bradley.

stockholders that the president had made this purchase from the new corporation "at their purchase price." The old corporation continued in possession, and used it in the prosecution of its business for some months, when, after it had become insolvent, a deed providing for the payment of the mortgages as part of the consideration, was executed and put on record by the president of the two companies. HELD :

1st. That the old corporation must be presumed conclusively to have accepted the deed and was therefore bound by the covenant thereof to pay the mortgages.

2nd. That the separate claims of the vendors, based on the two certificates of preferred stock in the new corporation, taken in lieu of the $5,000, it being supposed at the time that it would soon succeed the old corporation, were valid claims against the assets of the old corporation.

The fact that the old corporation was insolvent when the deed was delivered to it, would interpose no obstacle to its acceptance, as it imposed no new obligation, but was only the legal evidence of the contract which when made, was a valid exercise of power by both corporations.

Where an exception is exact and definite as to the item of the account excepted to, it is not necessary that all the reasons relied on to support the exception should be stated in the exception itself.

APPEALS from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., MILLER, ROBINSON, IRVING, BRYAN, FOWLER, and McSHERRY, J.

*Edgar H. Gans,* for the appellants.

*William L. Marbury,* and *William A. Hammond,* (with whom were *N. Rufus Gill and Son,* on the brief,) for the appellees.

FOWLER, J., delivered the opinion of the Court.

There are two appeals in this record, but they both involve the same questions, and will therefore be considered together.

It appears by the agreed statement of facts that the Waring Manufacturing Company of Cecil County, made a deed of assignment for the benefit of its creditors on the twenty-third of May, 1890; Hanson H. Haines and Francis Stokes having been named therein as trustees. Upon the petition of these trustees, the Circuit Court of Baltimore City duly assumed jurisdiction over the administration of the trust by its order of June 6, 1890. The trustees proceeded to administer their trust under the direction of said Court, and, the claims of creditors having been filed, the matter was referred to the auditor, who returned an account allowing the joint claim of the appellees, Detrick and Bradley, for $19,441, and disallowing their separate claims each for the sum of $2,650.

The appellants, Francis Stokes and Hanson H. Haines, being *bona fide* creditors of the Waring Manufacturing Company, excepted to the allowance of the joint claim of the appellees, and the latter excepted to the disallowance of their separate claims by the auditor.

By its orders of the 27th July, 1891, the Court below allowed both the joint and separate claims of the appellees, and from these orders said Stokes and Haines, as creditors, have taken separate appeals.

The controlling question here depends upon the effect to be given to the deed of the 21st May, 1890, between the Waring Brothers Company as grantor, and the Waring Manufacturing Company as grantee, by which, in consideration of $100,000, the former conveyed to the latter all the real estate therein mentioned—the deed providing that the mortgages therein mentioned, amounting to $80,000, should be considered a part of said consideration.

It will be necessary, in order to a clear understanding of the case, to give as briefly as possible, a history of these two corporations, and their relations to each other, referring more particularly to some of the facts further on.

The Waring Brothers Company appears to have had but two transactions—one being the purchase from the appellees of their property at Locust Point, in Baltimore City; and the other was the sale and conveyance of that property to the Waring Manufacturing Company. By the terms of the contract of sale of the former company with the appellees, that company was to pay them $20,000 in cash, execute a mortgage for $27,000, and assume the payment of the existing mortgages, amounting to $53,000—thus making the whole consideration $100,000.

The Waring Manufacturing Company was the older of the two corporations, and appears to have been engaged in the manufacture of fertilizers for some years prior to the beginning of this litigation, and on the 18th December, 1889, by its board of directors, passed a resolution declaring that, inasmuch as its charter was about to expire, it was expedient that it should be amended, and it was accordingly amended so as to continue the existence of the corporation until 1st January, 1895.

The corporation was also given power to carry on its operations in the City of Baltimore, and its President, Thomas Waring, was authorized to purchase the fertilizer works and property of the Waring Brothers Company in that city, which was purchased by it, as we have seen, from the appellees.

All this was done in accordance with suggestions made in the report of the directors of the Waring Manufacturing Company, in which they say the intention of the organization of the Waring Brothers Company had been, that it should succeed the Waring Manufacturing Company on the expiration of the latter's charter; but it was

then believed that the interest of all concerned would be better served by extending the charter of the manufacturing company, and continuing the business in its own name. On the same day and at the same place the Waring Brothers Company, by its board of directors, substantially the same as that of the other company, passed a resolution to the same effect as the one above mentioned; and also resolved that it would be for the interest of both companies that a sale and conveyance of all the Waring Brothers Company's real estate, in Baltimore City, should be made to the Waring Manufacturing Company at their (the Waring Brothers Company) price. Accordingly the property just named was by the deed in question of the 21st May, 1890, conveyed by the Waring Brothers Company to the Waring Manufacturing Company for the sum of $100,000, and the deed was recorded among the Land Records of Baltimore City the day following its execution.

In compliance with its contract of sale, the Waring Brothers Company executed a mortgage to the appellees for $27,000, the unpaid balance of which constitutes their joint claim in this case. The cash payment of $20,000 which the Waring Brothers Company agreed to pay the appellees, was not paid by it, but the other company paid to the appellees $10,000 in cash, gave them its note for $5000 which it afterwards paid, and in lieu of the remaining $5000, the appellees each accepted a certificate of preferred stock of the Waring Brothers Company, which at that time, it was supposed, would soon succeed the other company. Upon these two certificates the separate claims of the appellees, each amounting to $2650, are based.

The deed in question contains this provision, among others: * * * "Both of said lots herein described being subject to the operation and effect of a mortgage from the said Waring Brothers Company of Cecil County to

Louis F. Detrick and William L. Bradley, dated the twenty-sixth day of April, 1889, and recorded among the Land Records aforesaid, in Liber J. B., No. 1238, &c., to secure the payment of the sum of twenty-seven thousand dollars, with interest," &c., * * *; "*and the said Waring Manufacturing Company of Cecil County hereby covenants to pay the mortgage debts as they shall respectively mature,* as well as the interest to accrue thereon, according to the term and effect of the promissory notes therein recited."

This deed is signed only by Thomas Waring, as President of the Waring Brothers Company, but there can be, and there is, no question made that if it was duly delivered by the grantor and accepted by the grantee, the latter would be bound by its covenants to pay the mortgage debts as fully as if it had executed said deed in the most formal manner. *Leppoc, et al. vs. National Union Bank of Maryland,* 32 *Md.,* 143-4; *George vs. Andrews and Wife,* 60 *Md.,* 33; *Boone on Mortgages, secs.* 124-5-6.

It is contended, however, by the appellants, that the deed here, notwithstanding it appears to have been duly executed, acknowledged and recorded, is invalid, and that, therefore, the Waring Manufacturing Company is not liable on its covenants therein contained. And this contention is founded upon the following grounds:

First, because the deed in question was never delivered by the Waring Brothers Company to the Waring Manufacturing Company; and,

Second, because said deed never was accepted by the latter company.

We have already stated the facts showing the relations existing between these two companies. Both were managed by substantially the same persons, two of whom, the Messrs. Waring, had made a contract to buy from the appellees their Locust Point fertilizer works, in

Baltimore City, but subsequently substituted the grantor company in place of themselves as purchasers.

This property was conveyed to the grantor company by the appellees by their deed dated 26th of April, 1889. But, inasmuch as the grantor company was without business and without money, the cash payment of $20,000 was arranged by the Waring Manufacturing Company.

The last named company, the grantee, took possession of and used the property from the day it was conveyed to the grantor company by the appellees, and continued to occupy and use it until the 23rd of May, 1890, when the assignment for the benefit of creditors was made.

After it had been determined by both companies that the Waring Manufacturing Company should continue the business, there seemed to be no longer any reason for the existence of the Waring Brothers Company, and it therefore proceeded to get rid of both its assets and liabilities, which it sought to accomplish by the deed in question. It was, of course, supposed at the time of this conveyance, that the property therein mentioned was worth very much more than the mortgages which the grantee company covenanted to pay as part of the consideration. This expectation, however, was not realized, and the grantee company or its creditors now seek to avoid the liability created by its covenants contained in the deed, on the ground that the deed itself is void because it conveys the whole of the grantor company's property, and its execution and delivery have not been assented to by its stockholders or a majority of them. *Morawetz on Corporations*, sec. 413; *Treadwell vs. Salisbury Manufacturing Co.*, 7 *Gray*, 393.

The stockholders of this company are Thomas and Wilson Waring, Thomas H. White and the two appellees, Detrick and Bradley.

The two first mentioned were present at the meeting of the board of directors of the grantor company when

Stokes and Haines *vs.* Detrick and Bradley.

it was determined, and Thomas Waring, as President, was directed, to convey this property to the grantee company; and Mr. White was equally aware of this action of the company, for he attended the various meetings of the stockholders called for the purpose of securing their assent, in addition to that of the board of directors, to make the deed.

Much stress was laid upon the testimony of some of the stockholders to show that at none of the meetings was a resolution passed giving the required assent, but that, on the contrary, such resolution was offered, and not passed. But giving all this testimony the full force claimed for it, all that can be said to be established by it is, that the stockholders never affirmatively authorized the conveyance of the property. It does not show, however, that they did not afterwards acquiesce in the action taken by the directors. It is not claimed that any of the stockholders, except the appellee, Detrick, ever made any objection to this sale and conveyance, and we think it is apparent from the testimony that he did not object to the sale, but to the proposed modification of the original terms; namely, that he and Mr. Bradley should accept preferred stock of the grantee company in the place of preferred stock in the grantor company.

The deed having thus been made by order of the directors, and the stockholders having at least never taken any steps to condemn the unauthorized act, nor to seek judicial redress at the proper time, it should in equity at least, and good conscience be held as effective as if they had given their express assent to its execution.

For, while it is well settled that the directors of a corporation cannot ordinarily alone sell or convey the whole of its property, yet it is equally true that, if such an unauthorized transfer is made, it may be ratified by the assent of the stockholders. *Morawetz on Corporations, secs.* 523, 577. And such assent may be inferred

from their failure to protest against and promptly condemn the unauthorized acts of the officers of the corporation. *Fort Worth Publishing Co. vs. Hitson & Reed,* 80 *Texas,* 216, (14 *S. W. Rep.,* 846;) *Sheldon H. B. Co. vs. Eickemeyer,* 90 *N. Y.,* 614.

In *Kelsey vs. The National Bank of Crawford Co.,* 69 *Pa. St.,* 429, it is said: "The law is well settled that a principal who neglects promptly to disavow the acts of his agent by which the latter has transcended his authority, *makes the act his own,* and the maxim which makes ratification the equivalent to a precedent authority, is as predicable of ratification by a corporation as it is of a ratification by any other principal, and is equally to be presumed from the absence of its dissent." *Morawetz on Corp.,* sec. 618; *Ragland vs. McFalls,* 27 *N. E. Rep.,* 75.

The stockholders of the grantor company, having had knowledge of the action taken by its board of directors on the 18th of December, 1889, when it directed all its property to be sold and conveyed to the other corporation, and not having acted upon that knowledge when they should have done so, must now be held to have ratified the execution and delivery of the deed.

Second. As to the assent of the Waring Manufacturing Company, the grantee.

As we have already seen, the execution and recording of the deed are *prima facie* evidence of delivery and acceptance. *Leppoc vs. The National Union Bank of Maryland,* 32 *Md.,* 145.

But in the case just referred to, it is also held that this presumption may be repelled by parol proof of the circumstances attending the execution and recording of the deed.

All the circumstances here,—so far as we have been able to gather them from the record—confirm, rather than repel the presumption of due delivery arising from recording.

It will be remembered that the grantee company on the 18th December, 1889, by resolution of its directors, directed the person who was its president and also president of the grantor company, to purchase the property of the latter company for $100,000, and on the 26th of the same month the directors of the grantee reported to its stockholders, that the president had made this purchase from the grantor company "at their purchase price." Now, the contract of the grantor company was that it should pay off the mortgages mentioned, including that of the appellees, as part of the price of the property, and it would seem clear, without reference to the deed, that when the grantee company agreed to buy the property at the grantor company's price, the former agreed to assume the payment of the mortgages.

In consideration of this agreement of the grantee company to take the place of the grantor company, the former was allowed to take possession of the property, and use it in the prosecution of its business for some months until it became insolvent and made an assignment. Having possessed and used the property by virtue of the agreement we have just referred to, we think it would be a fraud upon the appellees to allow the grantee to escape from its liabilities under that agreement.

This view is well expressed in the appellees' brief: "By continuing in possession of the property after January 1st, 1890, with knowledge of the terms on which it was being allowed to remain in possession, it was too late for the Waring Manufacturing Company (the grantee,) to have repudiated those terms. *Equity presumes that which ought to have been done, has been done.* When, therefore, the deed was put on record by the president of the two companies, the Waring Manufacturing Company must be presumed conclusively to have accepted that deed; and, if so, it is conceded that it is bound by the covenants thereof, one of which is, that it shall pay

this mortgage debt to the appellees Detrick and Bradley."

It was strongly urged by the appellants that the grantee company having been insolvent when the deed was delivered to it and recorded by its president, neither he nor the board of directors, nor any nor all of its officers, combined, could validly accept and record the deed, so as to impose new obligations upon the company. But, as we have seen, this was not a new obligation. The deed is but the legal evidence of that contract which when made was a valid exercise of power by both corporations.

It would seem to follow that the separate claims of the appellees, based on the two certificates of preferred stock, are also valid claims against the assets of the Waring Manufacturing Company.

For, having held that the deed is valid, the grantee company is bound, of course, to pay the whole of the purchase money, a part of which is represented by this preferred stock. But, in addition to this, the grantee company in compliance with its agreement to take the property at the same price paid for it by the grantor company, gave to each of the appellees a credit on the books of the Waring Manufacturing Company, and thus recognized these claims as valid and just.

It remains to consider the objection made by the appellees to the consideration of any of the reasons urged in this Court against the appellees' claims, except those specifically set forth in the exceptions filed by the appellants in the Court below.

Section 34, Article 5 of the Code provides that "on an appeal from a Court of equity no objection * * * * to any account stated and reported in said cause shall be made in the Court of Appeals, unless it shall appear by the record that such objection was made by exceptions filed in the Court from which such appeal shall have been taken."

Stokes and Haines *vs.* Detrick and Bradley.

There can be no question in regard to the general rule laid down in *Darby & Co. vs. Rouse, ante page* 26, and in *Young vs. Omohundro,* 69 *Md.,* 431, *&c.,* and many other cases. In the last named case it is said: "The section and Article of the Code already referred to, in terms strictly prohibits this Court from passing upon an objection to an audit, unless properly made in the Court below. It was clearly the intention of the Legislature to require an exact and definite statement of exceptions in the lower Court, so that neither party could be taken by surprise on appeal." In the case of *Darby & Co. vs. Rouse,* the appellee claimed his statutory exemption of $100, and it was allowed by the auditor. The appellant filed an exception to this allowance, and for the first time he made the point here that the appellee had not proved that he had no other property. It was the duty of the appellant to have supplied that proof in the Court below in order to sustain his exceptions, and not having done so, he was not allowed to stand upon the objection here. But in the case before us, it is apparent that the ground of objection relied on now, namely, the non-delivery of the deed was fully covered in the testimony by both sides.

The exception filed by the appellants was exact and definite as to *the item* of the account excepted to, and it was not necessary that all the reasons relied on to support the exception should have been stated in the exception itself.

> *Orders affirmed, and*
> *cause remanded*
> *for further proceedings.*