## AMBLER *v.* CHOTEAU.

Where the object of a suit in chancery is the recovery of the damages which the complainant alleges that he has sustained by reason of an unlawful and fraudulent conspiracy to cheat him out of his interest in an original invention, which is the subject-matter of the controversy, the bill should be dismissed, as his remedy is at law.

APPEAL from the Circuit Court of the United States for the Eastern District of Missouri.

The case is stated in the opinion of the court.

*Mr. Oliver D. Barrett* and *Mr. Augustine I. Ambler* for the appellant.

*Mr. Philip Phillips* and *Mr. W. Hallett Phillips* for the appellees.

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

This is a suit in equity, and the case made by the bill may be stated as follows: —

Ambler, the appellant, and one R. M. Whipple, invented an improved mode of manufacturing gas from petroleum, for which they were about to apply for patents, and being desirous of securing each to the other one undivided half of what they were doing, entered, on the 24th of May, 1869, into an agreement of copartnership to effect that object. The third article of the agreement was as follows: —

"ARTICLE THIRD. — R. M. Whipple shall have the exclusive and entire 'business management' of the same, so as to include the introduction of said invention to public use, and to secure, as far as possible, the adoption of the same, both in this country and in all other countries; and for which purpose, and all and singular the purposes incident thereto, the said R. M. Whipple shall have full and ample power and authority, and is hereby granted by said Ambler full power and authority to act for him in the premises, to sign his name, and make his seal to any instrument, and all instruments of writing needful and necessary to carry out the object and intention of this agreement, as fully and entirely as the same may be done by the said Ambler if personally present at the doing

thereof; and the said A. I. Ambler hereby ratifies and confirms all and singular whatsoever may be legally and lawfully done in and about the premises."

All patents secured for the invention were to be put into the business and owned by the parties in equal shares. The proceeds of sales and all other profits were to be equally divided.

For the purpose of carrying into effect the provisions of the partnership agreement, Ambler, on the 25th of May, executed to Whipple an assignment of all his interest in the invention and in the patents that might be issued thereon. The agreement and assignment were both recorded in the Patent Office. On the 13th of July, 1869, a patent was issued to Whipple & Ambler for "Whipple & Ambler's Steam Petroleum Gas-Generating Apparatus," which was embraced in their inventions. In September, 1869, Whipple fraudulently determined to exclude Ambler from the benefits of their undertaking, and to accomplish that purpose formed another partnership with one Thomas S. Dickerson, to whom, in October, 1869, a patent was issued for an improved mode of manufacturing gas from petroleum, which was the invention of Whipple & Ambler. Afterwards another patent was issued to Whipple & Dickerson, which came within the scope of the Whipple & Ambler experiments. In this condition of affairs, Ambler, on the 4th of January, 1870, began a suit in equity in the Supreme Court of the District of Columbia against Whipple & Dickerson, the object of which was to bring the Dickerson and the Whipple & Dickerson patents into the Whipple & Ambler partnership, and to get an account of sales and profits. That court dismissed the bill; but that decree was, on appeal, reversed here, at the October Term, 1874, and the cause remanded with instructions to enter another decree, "declaring Whipple & Dickerson to hold in trust for the benefit of Ambler to the extent of one-half of the two patents issued to them," and "that an accounting be had as to the profits realized by them, or either of them, from the use or sale, or otherwise, arising from said patents." *Ambler* v. *Whipple*, 20 Wall. 546, 559. · A decree was entered in the court of the District on the 2d of February, 1875, in accordance with this mandate,

and afterwards upon an accounting a balance was found due from Whipple of $666,052.35. Whipple is insolvent, and the amount due from him is uncollectible.

On or about the 21st of April, 1870, Whipple & Dickerson sold and conveyed to James G. Blunt and Merritt H. Insley, of the State of Kansas, the right to use the Dickerson patent in Missouri for $35,000, and on the 23d of December, 1871, the right to use the Whipple & Dickerson patent in the same State for the same sum. On the 18th of December, 1871, Charles P. Choteau, Gerard B. Allen, Charles H. Peck, Stilson Hutchins, Theodore Laveille, George H. Rea, Albert C. Ellithorpe, John Kupferle, James G. Blunt, M. H. Insley, Charles P. Warner, Frank Gregory, and Oliver B. Filley organized a corporation under the general corporation law of Missouri by the name of the Missouri Liquid Fuel Illuminating Company, with an authorized capital of $500,000, divided into five thousand shares of one hundred dollars each. The persons thus organizing the corporation were, by the articles of association, constituted directors for the first year. On the 23d of December, 1871, Blunt & Insley, in consideration of $83,000 in cash, or its equivalent, and $417,000 in capital stock, assigned to this company all their right to the Dickerson and Whipple & Dickerson patents for the State of Missouri. At the same time Whipple & Dickerson agreed with the company to make such conveyance as might be deemed necessary to perfect the title of the company under the assignment from Blunt & Insley. When these several transactions took place all the parties had full notice of all the rights and claims of Ambler in the premises.

This suit is brought against Choteau, Harrison, Allen, Peck, Rea, Laveille, Warner, Gregory, and Filley. All the other corporators and directors, and so far as appears the stockholders of the Missouri corporation, are named as defendants in the bill, but they were never served with process, and have never appeared. Neither Whipple, Dickerson, nor the Missouri corporation is even named as a defendant. The persons who are served and who appear in the cause hold, or are interested in, the stock of the corporation to the amount of $150,000 or thereabouts. The bill abounds in charges of fraud and con-

spiracy, in a general way, against all the persons who are named, whether parties to the suit or not; but, so far as the defendants served with process are concerned, the only specific allegation to be found is that, being "incorporators of the Missouri Liquid Fuel and Illuminating Company," they "made said purchase and paid said large sum of money with full knowledge of the trust and of the fraud and breach of trust aforesaid [that of Whipple & Dickerson], and with lawful and timely notice of your orator's legal rights and equitable title therein, without any effort whatever on the part of said directors of said company to protect your orator's share of the purchase-money, as they were bound in law, in equity, and good conscience to do in this behalf, and without the knowledge or consent of your orator and to your orator's damage and injury."

At the opening of the bill it is expressly averred "that the subject-matter of this complaint and the foundation and gravamen of this bill is the franchise, the trust, the breach of trust, the collusion, conspiracy, and fraud between the defendants and said Whipple & Dickerson, as the trustees of your orator, the rights and remedies of your orator against these defendants, and the prayer for relief." It is then stated "that this cause is an action on the case in the nature of a conspiracy, founded upon the fraudulent intention and specific acts of the defendants to cheat, swindle, and defraud your orator of his franchise, and the rights in the patent and trust property aforesaid, and that said plan consists in an agreement with a common design to do an unlawful act, and which plan, agreement, and conspiracy, being a common design to do an unlawful act, was fully carried out, as will hereafter more fully appear, to the great damage and injury of your orator."

It is nowhere alleged that these defendants had any actual connection with the transactions of Whipple and Dickerson otherwise than as corporators, stockholders, and directors of the Missouri corporation, though it is stated that they "gave to such fraudulent firm [Whipple & Dickerson] credit, character, and support by dealing with them," &c., and that they "took no steps whatever, legal or otherwise, to recover said property or the proceeds thereof, or to stay Whipple & Dickerson in

the pursuit and furtherance of the fraud in the waste of the proceeds of the trust," &c.

The prayer is that the defendants may be enjoined "from proceeding further with any dealings with the said partnership and trust property aforesaid," and " that the damages to your orator for the wrong and injury done in this behalf may be duly considered, and that an account be taken thereof before the master, . . . and that your orator, upon the final hearing, be allowed, adjudged, and decreed damages therefor."

This is the substance of all there is material in the mass of irrelevant matter that incumbers the record and fills the voluminous argument filed by the appellant in his own behalf. Upon full consideration we have no hesitation in saying that it presents no case for such relief in equity as is asked. If, as is more than once distinctly alleged, the object of the suit is to recover damages for an unlawful and fraudulent conspiracy to cheat Ambler out of his interest in the original invention which is the subject-matter of the controversy, the remedy is clearly at law, and not in equity. If an account of profits is wanted, and an injunction against the further use of the patented inventions under the transfers from Whipple & Dickerson, then the suit should have been against the Missouri corporation in its corporate capacity, and not against a part only of its stockholders and directors individually. If the object is to charge these defendants for the profits made by Whipple through his breach of trust, then he is a necessary party, and nothing can be done in his absence. In any event, these defendants are but purchasers from Whipple of specific interests in the property which he held in trust for himself and Ambler. While the allegations of fraud in their general terms are as broad as language can make them, specifically they are confined by other allegations to the use of the patented invention in Missouri by the Missouri corporation, of which the defendants are stockholders and directors. It is not in any manner alleged or claimed that the defendants have profited by what Whipple has done, except through the title acquired by the conveyance to Blunt & Insley, and from them, with the consent of Whipple & Dickerson, the faithless trustees, to the corporation. No effort is made to set aside these conveyances.

It is conceded that Blunt & Insley actually paid Whipple & Dickerson $70,000 for the assignments which were made, and it is fairly to be inferred that in the accounting had under the decree of this court in *Ambler* v. *Whipple & Dickerson,* Whipple has been charged with the proceeds of this sale. But, whether that be so or not, no case has been made by the loose and general allegations in this bill for relief against these defendants. The words "fraud" and "conspiracy" alone, no matter how often repeated in a pleading, cannot make a case for the interference of a court of equity. Until connected with some specific acts for which one person is in law responsible to another, they have no more effect than other words of unpleasant signification. While in this case the offensive words are used often enough, the facts to which they are applied are not such as to make the defendants answerable to the complainant for the damages and other relief he asks.

*Decree affirmed.*