## LIVE STOCK NAT. BANK, SIOUX CITY, IOWA, v. UNITED STATES.

Circuit Court of Appeals, Eighth Circuit. November 14, 1929.

No. 8610.

William C. Dorsey, of Omaha, Neb. (H. Malcolm Baldridge, of Omaha, Neb., on the brief), for appellant.

Charles T. Hendler, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C. (Bennett E. Rhinehart, U. S. Atty., of Anamosa, Iowa, C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., on the brief), for the United States.

Before VAN VALKENBURGH and GARDNER, Circuit Judges, and WOODROUGH, District Judge.

GARDNER, Circuit Judge. In this action plaintiff seeks to recover from the United States certain war and excess profit taxes collected from it for the years 1917 and 1918, amounting to $36,590.60, which it is alleged were wrongfully and illegally assessed against it by the Commissioner of Internal Revenue. The basis of this allegation is that the Commissioner of Internal Revenue assessed its excess profit tax for the years 1917 and 1918 in the manner prescribed by section 301 of the Revenue Act 1918 (40 Stat. 1088) without the benefit of section 210 for the year 1917 (40 Stat. 307) and of section 328 for the year 1918 (40 Stat. 1093). That it was the duty of the Commissioner of Internal Revenue, upon application of the plaintiff for assessment of its tax for said years, under the provisions of section 210 of the Revenue Act for 1917, and sections 327 and 328 of the Revenue Act for the year 1918 (40 Stat. 1093) in good faith to determine, from the facts in his possession and within his knowledge, whether the borrowed capital employed and used by the plaintiff in its business during said years, consisting of deposits as well as other borrowed money, was so excessive in comparison with other representative banks as to constitute an abnormality affecting the capital or income, and in arriving at such determination to consider and include deposits as borrowed capital to the same extent as any and every other form of money borrowed by banking and other commercial and industrial corporations, and used as a material income-producing factor in their business. It is then alleged, as to the year 1918, that "regardless of his said duty and of the facts hereinafter set forth with regard to the plaintiff's borrowed capital during said year, which were within his possession and knowledge, the said Commissioner arbitrarily refused to consider and include the plaintiff's deposits as borrowed capital in arriving at such determination, and rejected the said bank's application for assessment of its tax upon the erroneous and unjust assumption that said deposits were not borrowed capital and should not be considered and included as such, thereby wrongfully, unlawfully and fraudulently denying and depriving said bank of consideration of its said application and claim upon the merits of the same and upon the facts in the possession and knowledge of said Commissioner, not because the excessive ratio and amount of the said bank's borrowed capital did not in fact constitute

an abnormal condition entitling said bank to the benefit of said sections if deposits had been included therein, but because the said Commissioner erroneously, wrongfully and fraudulently refused to so include or consider the same in arriving at such determination."

A like allegation is contained in the petition with reference to the year 1917.

There is attached to the petition, and made a part thereof, a copy of the Commissioner's decision, which, omitting formal parts, is as follows:

"Reference is made to your protest dated January 14, 1925, against the denial of your application for assessment of your profits tax for 1917 and 1918, under the provisions of section 210 of the Revenue Act of 1917 and section 328 of the Revenue Act of 1918, respectively, as set forth in Bureau Letter dated December 20th, 1924.

"After a careful review of your protest and all of the evidence submitted, at oral hearing held February 18, 1925, in support of your contentions, you are advised that the Bureau holds that no abnormality affecting either your capital or income has been disclosed for 1917 or 1918, which would bring your case within the scope of section 210 of the Revenue Act of 1917 or paragraph (d) of section 327 of the Revenue Act of 1918. Furthermore, the audit of your case disclosed no exceptional hardship evidenced by gross disproportion between the tax computed without benefit of section 210 for 1917 and section 328 for 1918, and the tax computed by reference to the representative corporations specified in these sections.

"Accordingly, the conclusions set forth in the above mentioned letter are sustained.

"Your case, is, therefore, deemed closed."

A demurrer was interposed to plaintiff's petition on the grounds that (1) the court had no jurisdiction of the subject-matter, (2) the petition did not plead any facts to give rise to a question of fraud as against the defendant; such allegations being mere conclusions. The lower court sustained the demurrer, and, plaintiff declining further to plead, judgment of dismissal was entered, and from that judgment this appeal is prosecuted.

The statutes, so far as pertinent to the issues in this case, are as follows:

"Sec. 327. That in the following cases the tax shall be determined as provided in section 328: * * *

"(d) Where upon application by the corporation the Commissioner finds and so declares of record that the tax if determined without benefit of this section would, owing to abnormal conditions affecting the capital or income of the corporation, work upon the corporation an exceptional hardship evidenced by gross disproportion between the tax computed without benefit of this section and the tax computed by reference to the representative corporations specified in section 328. This subdivision shall not apply to any case (1) in which the tax (computed without benefit of this section) is high merely because the corporation earned within the taxable year a high rate of profit upon a normal invested capital, nor (2) in which 50 per centum or more of the gross income of the corporation for the taxable year (computed under section 233 of Title. II) consists of gains, profits, commissions, or other income, derived on a cost-plus basis from a Government contract or contracts made between April 6, 1917, and November 11, 1918, both dates inclusive.

"Sec. 328. (a) In the cases specified in section 327 the tax shall be the amount which bears the same ratio to the net income of the taxpayer (in excess of the specific exemption of $3,000) for the taxable year, as the average tax of representative corporations engaged in a like or similar trade or business, bears to their average net income (in excess of the specific exemption of $3,000) for such year. * * * *" 40 Stat. 1093.

While plaintiff made application to the collector of internal revenue for the relief demanded in this action, no appeal was taken by it from the decision of the Commissioner to the Board of Tax Appeals, nor was any application made to that board for a review of such determination. Instead of so doing this action was commenced in the District Court, and the jurisdiction of that court to entertain such an action is challenged. If plaintiff was entitled to any further relief, it should have sought that relief before the Board of Tax Appeals where the action of the Commissioner was reviewable. Blair v. Oesterlein Machine Co., 275 U. S. 220, 48 S. Ct. 87, 72 L. Ed. 249.

The precise question here involved was considered by the Supreme Court in Williamsport Wire Rope Co. v. U. S., 277 U. S. 551, 48 S. Ct. 587, 588, 72 L. Ed. 985, and the opinion in that case, written by Justice Brandeis, is so illuminating and apposite that we quote liberally therefrom. It is there said:

"The contention here is that, since the Commissioner's action was made reviewable on appeal by the Board of Tax Appeals, it is and was always reviewable in an original

proceeding before the Court of Claims. The argument is that Congress has conferred upon the Court of Claims jurisdiction over suits to recover taxes alleged to have been 'erroneously or illegally assessed or collected'; that here its jurisdiction is invoked to recover taxes claimed to have been assessed illegally, because assessed under section 301 * * * instead of under sections 327 and 328; that it must therefore have power to determine whether conditions existed which entitled the company to the special assessment provided for by sections 327 and 328; that if it finds that such conditions did exist, it must also have power to determine the true amount of the tax computed as therein directed; and that if it appears that the tax actually paid exceeds that which would have been exacted under the special assessment, the court may award judgment for the difference.

"Sections 327 and 328 were intended to broaden the powers of relief first conferred by section 210 of the War Revenue Act of 1917, c. 63, 40 Stat. 300, 307. * * * It was 'believed necessary to provide a special method of determining the tax for those cases in which the ordinary method of assessment would result in grave hardship or serious inequality.' Senate Report, 65th Cong. 3d Sess. No. 617, p. 14. The special assessment is to be made under paragraph (a) when the Commissioner 'is unable to determine the invested capital.' It is to be made under paragraph (d) if he 'finds and so declares of record that the tax if determined without benefit of this section would * * * work * * * an exceptional hardship. * * *' The tax imposed on the Commissioner by sections 327 and 328 was one that could only be performed by an official or a body having wide knowledge and experience with the class of problems concerned. For the requirement of a special assessment under paragraph (d) of section 327, and its computation in all cases, are dependent on 'the average tax of representative corporations engaged in a like or similar trade or business.'

"To perform that task, power discretionary in character was necessarily conferred. Whether, as provided in paragraph (d) of section 327, there are 'abnormal conditions'; whether, because of these conditions, computation under section 301 would work 'exceptional hardship'; whether there would be 'gross disproportion' between the tax computed under section 301 and 'that computed by reference to the representative corporations specified in section 328'; what are 'representative corporations engaged in a like or similar trade or business'; which corporations are 'as nearly as may be, similarly circumstanced with respect to gross income, net income, profits per unit of business transacted and capital employed, the amount and rate of war profits or excess profits, and all other relevant facts and circumstances'—these are all questions of administrative discretion.

"The soundness of the judgment exercised by the individual or body to whom the tax was confided would depend largely upon the extent both of the knowledge of the special subject possessed and of the experience had in dealing with this particular class of problems. The conclusions reached would rest largely upon considerations not entirely susceptible of proof or disproof. Congress did not, by the Revenue Act of 1918, * * * require the Commissioner to embody the results of his deliberation in findings of fact. The purpose of the meager record prescribed by section 328 (e) in case the Commissioner concludes to order a special assessment is apparently to protect the Treasury, not the taxpayer. For, if the Commissioner refuses to make the special assessment, he is not required to state the grounds of his refusal, or indeed, even to record the fact of such refusal. Thus the aims which induced Congress to enact sections 327 and 328, the nature of the task which it confided to the Commissioner, the methods of procedure prescribed, and the language employed to express the conditions under which the special assessment is required, all negative the right to a review of his determination by a court."

This decision leaves but little further to be said in this case. It seems clear that the plaintiff's remedy, if any, was to appeal to the Board of Tax Appeals, and it is equally clear that this court is without jurisdiction to review the action of the Commissioner of Internal Revenue.

It is argued, however, that the court has jurisdiction in this case, because it is alleged in the petition that the Commissioner wrongfully, unlawfully, and fraudulently denied and deprived the plaintiff of consideration of its application and claim upon the merits and upon facts in the possession and knowledge of the Commissioner. This contention is bottomed on the following sentence in the opinion in the Williamsport Wire Rope Company Case, supra, "We conclude that the determination whether the taxpayer is entitled to the special assessment was confided by Congress to the Commissioner, and could not, under the Revenue Act of 1918, be challenged in the courts—at least in the absence of fraud or other irregularities."

█ It is of course elementary that all well-

pleaded facts in a pleading are admitted by a demurrer thereto. Mere allegations of conclusions and general charges that the decree challenged was arbitrary, unjust, unlawful, or fraudulent are mere legal conclusions, and, when eliminated from this petition, it will be observed that there are no facts pleaded upon which such allegations can rest. Marquez v. Frisbie, 101 U. S. 473, 25 L. Ed. 800; Ambler v. Choteau, 107 U. S. 586, 1 S. Ct. 556, 27 L. Ed. 322; Van Weel v. Winston, 115 U. S. 228, 6 S. Ct. 22, 29 L. Ed. 384; Silberschein v. United States, 266 U. S. 221, 45 S. Ct. 69, 69 L. Ed. 256.

There was attached to and made a part of the petition a copy of the decision of the Commissioner of Internal Revenue. By reference to this decision it appears that the Commissioner did not decline to act and did not decline to entertain plaintiff's application. As will be observed, it is recited in this decision that: "After a careful review of your protest and all of the evidence submitted, at oral hearing held February 18, 1925, in support of your contentions, you are advised that the Bureau holds that no abnormality affecting either your capital or income has been disclosed for 1917 or 1918, which would bring your case within the scope of section 210 of the Revenue Act of 1917 or paragraph (d) of section 327 of the Revenue Act of 1918." This decision conclusively shows that plaintiff's application for relief was considered upon its merits and upon the evidence produced, and was decided adversely to the plaintiff's contentions.

In the final analysis it clearly appears from the face of the petition that the complaint of the plaintiff is not that the Commissioner declined to act, nor, indeed, that he acted fraudulently or arbitrarily, but that he acted erroneously, or at least that his decision was adverse to the contention of plaintiff. This falls far short of establishing an arbitrary or fraudulent action on the part of the Commissioner. At most the allegations of the petition challenge the soundness of the Commissioner's determination upon a matter which was properly submitted to his judgment.

It follows that, the allegations of fact contained in the petition being insufficient to show any fraudulent or arbitrary action for refusing to act on the part of the Commissioner, the lower court was without jurisdiction, and the facts alleged in the petition were insufficient to constitute a cause of action.

The judgment of the lower court is therefore affirmed.