## NATIONAL BANK OF COMMERCE OF SEATTLE, WASH., v. UNITED STATES.

### No. 5768.

Circuit Court of Appeals, Ninth Circuit.

March 31, 1930.

William C. Dorsey, of Omaha, Neb., and Kerr McCord & Ivey and Chadwick, Mc-Micken, Ramsey & Rupp, all of Seattle, Wash., for appellant.

Anthony Savage, U. S. Atty., and Jeffrey Heiman, Asst. U. S. Atty., both of Seattle, Wash. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, John R. Wheeler, Sp. Atty., Internal Revenue, and Charles T. Hendler, Sp. Atty., Internal Revenue, all of Washington, D. C., of counsel), for appellee.

Before DIETRICH and WILBUR, Circuit Judges, and KERRIGAN, District Judge.

WILBUR, Circuit Judge.

This is an action to recover war and excess profits taxes claimed to have been erroneously collected for the years 1918–1919. The Commissioner of Internal Revenue computed the taxes to be paid by the appellant under the provisions of section 301 of the Revenue Act of 1918 (40 Stat. 1057, 1088). The appellant claims that it is entitled to the benefit of an assessment under the provisions of section 327, subd. (d) and section 328 of the Revenue Act of 1918 (40 Stat. 1057, 1093), on the theory that it comes within the proviso of section 327, subd. (d), calling for such an assessment where "owing to abnormal conditions affecting the capital or income of the corporation" the ordinary rules of assessment would "work upon the corporation an exceptional hardship evidenced by gross disproportion between the tax computed without benefit of this section and the tax computed by reference to the representative corporations specified in section 328." Section 327, subd. (d), also provides that "this subdivision shall not apply to any case (1) in which the tax (computed without benefit of this section) is high merely because the corporation earned within the taxable year a high rate of profit upon a normal invested capital. * * *" Section 327, subd. (d), Revenue Act of 1918.

The appellant avers in his complaint that it is engaged in the banking business, and that the proportion of its deposits to its invested capital is so very large and unusual that, as compared with other banks conducting a similar business, it has been subjected

to an excessive tax. Appellant's claim is in substance that the deposits should be treated as borrowed capital. It is alleged that the Commissioner has refused to consider the deposits of banks as "borrowed capital." It claims, for instance, that in 1918 it had $1,116 deposits for each $100 invested capital, and in 1919, $1,249 deposits for each $100 invested capital as against $722 in 1918 and $860 in 1919 for each $100 invested capital in the banks which the complaint alleges were "representative corporations engaged in like or similar trade or business," within the meaning of section 328, subd. (a) Revenue Act of 1918. The actual amount of invested capital of the appellant in 1918 was $1,675,382.29, in 1919, $1,755,133.81, and of the "deposits and other borrowed capital" $11,096,260 and $15,076,599, respectively. Or, to state the situation in another way, its excess of deposits and other borrowed capital over the representative corporations set out in the complaint was $9,508,831 in 1918 and $8,579,050 in 1919. Section 327 of the Revenue Act of 1918 is permissive in its terms authorizing the application of these sections to compute the tax, "where upon application by the corporation the Commissioner finds and so declares of record that the tax, if determined without benefit of this section would, owing to abnormal conditions affecting the capital or income of the corporation, work upon the corporation an exceptional hardship evidenced by gross disproportion between the tax computed * * * by reference to the representative corporations specified in section 328."

■ The appellant applied to the Commissioner for a determination of its tax for the year 1918 and 1919 in accordance with the rules provided in sections 327–328 of the Revenue Act of 1918, but the Commissioner denied the application. The first question presented for our consideration is whether or not the determination of the Commissioner denying appellant's application for an assessment of its tax under section 328(a) is final and conclusive as to the right of the appellant under sections 327–328, supra, to have the tax so computed. This question has recently been before the Supreme Court in Williamsport Wire Rope Co. v. United States, 277 U. S. 551, 48 S. Ct. 587, 590, 72 L. Ed. 985, and determined adversely to the appellant's contention. It is there held that the question of whether or not there were such abnormal conditions and exceptional hardships as would call for an assessment under section 327, supra, was one of adminis-

trative discretion and not for the courts to determine. Justice Brandeis, speaking for the court, announces the conclusion as follows:

"We conclude that the determination whether the taxpayer is entitled to the special assessment was confided by Congress to the Commissioner, and could not, under the Revenue Act of 1918, be challenged in the courts—at least in the absence of fraud or other irregularities."

■ In order to invoke the jurisdiction of the District Court to overturn the judgment of the Commissioner, and to meet the decision of the Supreme Court, appellant has made allegations by which it attempts to bring itself within the exception stated in the final phrase of the above quotation from Williamsport, etc., v. U. S., supra, by alleging that the act of the Commissioner in denying its petition was fraudulent.

The sum and substance of these allegations is that the Commissioner erroneously determined that deposits in banks were not to be considered borrowed capital within the meaning of that term as used in the administration of the tax laws. The appellant thus states his position in his brief:

"As alleged in the amended complaint, he has arbitrarily excepted and excluded banks from the benefits accorded to all other corporations where abnormality due to excessive borrowed capital exists, although the act itself makes no exception of banks but applies equally to all corporations called upon to pay excess-profits tax. * * *

"The plaintiff has alleged, and is prepared to prove, that the Commissioner, in passing upon its application for special assessment, refused to consider deposits as a part of its borrowed capital, thereby depriving the plaintiff of any real hearing on the merits, and failing to exercise his discretion in any real sense of the word."

The question as to whether such conduct is fraudulent has been recently considered by the Circuit Court of Appeals of the Eighth Circuit in Live Stock National Bank, Sioux City, Iowa, v. U. S., 36 F.(2d) 334. The exact question presented by appellant in this case was there considered, and, following the decision of the Supreme Court in Williamsport Wire Rope Co. v. U. S., supra, it is held in an opinion delivered by Judge Gardner that the District Court had no authority to review the action of the Commissioner of the Internal Revenue, and that the general allegations of fraud such as those·

contained in the complaint in this case are mere legal conclusions and did not justify the court in considering the question determined by the Commissioner. The court held that at most, conceding all the allegations and contentions of the appellant, the Commissioner merely acted erroneously and not fraudulently. We see no escape from that conclusion, which is well sustained by the authorities therein cited. Marquez v. Frisbie, 101 U. S. 473, 25 L. Ed. 800; Ambler v. Choteau, 107 U. S. 586, 1 S. Ct. 556, 27 L. Ed. 322; Van Weel v. Winston, 115 U. S. 228, 6 S. Ct. 22, 29 L. Ed. 384; Silberschein v. U. S., 266 U. S. 221, 45 S. Ct. 69, 69 L. Ed. 256.

Judgment affirmed.