**Carolyn L. JORDAN, etc., Plaintiffs,**

v.

**RELIABLE LIFE INSURANCE COMPANY, Defendant.**

**Civ. A. No. 88–AR–0543–S.**

United States District Court,
N.D. Alabama, S.D.

July 3, 1989.

James J. Thompson, Jr., Hare, Wynn, Newell and Newton, Birmingham, Ala., for plaintiffs.

Dan H. McCrary, Balch & Bingham, Birmingham, Ala., Robert C. von Ohlen, Jr., Lord, Bissell & Brook, Chicago, Ill., for Reliable Life Ins. Co.

## MEMORANDUM OPINION

ACKER, District Judge.

This case, brought by Carolyn L. Jordan, both as executrix of the estate of James I. Jordan, deceased, and as the beneficiary of a life insurance policy on her deceased husband, was tried with an advisory jury which answered special interrogatories somewhat enigmatically. In *Jordan v. Reliable Life Ins. Co.*, 694 F.Supp. 822 (N.D. Ala.1988), this court on September 8, 1988, held that defendant, Reliable Life Insurance Company, at that time had failed to establish that the controversy over whether or not Mr. Jordan was covered by Reliable's policy at the time of his death was governed by the Employee Retirement Income Security Act of 1974. The court, thereupon, denied Reliable's motion to strike Mrs. Jordan's jury demand. Later, based on newly developed information pressed upon the court by Reliable, and convinced that ERISA may have swallowed up, like a "black hole," even this garden-variety claim on an accidental death policy inasmuch as the contract was part of an employee benefit package, the court, *sua sponte*, invoked Rule 39(c), F.R.Civ.P., and empaneled an advisory jury, which heard the evidence and which answered special interrogatories as follows:

1. Did the parties to the insurance contract in question intend for the status of an insured riding within an aircraft ("passenger"; "pilot"; "crewmember") be determined as of the moment of impact or at some earlier time in the flight?

Moment of impact X    Earlier in flight ___

2. ONLY IF the jury has answered Question No. 1, "moment of impact," giving the term "pilot" the meaning intended by the parties to the insurance contract in question, was James I. Jordan a "pilot" in the aircraft when the crash occurred?

YES _____    NO    X

3. ONLY IF the jury has answered Question No. 1, "moment of impact," giving the term "crewmember" the meaning intended by the parties to the insurance contract in question, was James I. Jordan a "crewmember" in the aircraft when the crash occurred?

YES _____    NO    X

4. ONLY IF the jury has answered Question No. 1, "moment of impact," giving the term "passenger" the meaning intended by the parties to the insurance contract in question, was James I. Jordan a "passenger" in the aircraft when the crash occurred?

YES _____    NO    X

If this had been a trial by jury as a matter of right under the Seventh Amendment and Rule 39(a), F.R.Civ.P., as is now strongly indicated by the Supreme Court in *Granfinanciera, S.A. v. Nordberg,* ——— U.S. ———, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989),[1] the court's problem with the jury's

---

1. In *Granfinanciera*, the Supreme Court said, in terms unmistakably applicable to ERISA causes:

> *In re Graham,* 747 F.2d 1383 (CA11 1984), held that there was no Seventh Amendment jury trial right in a suit for the *equitable* remedy of setting aside an alleged fraudulent conveyance of *real estate* by a bankrupt. With respect to suits like respondent's, the court expressly noted that "an action by a creditor or trustee-in-bankruptcy seeking money damages is an action at law." *Id.,* at 1387 (citations omitted). *Damsky v. Zavatt,* 289 F.2d 46 (CA2 1961), also involved a conveyance of real estate. And there, too, the

court acknowledged that jury trials were ordinarily available with respect to monetary claims. See *id.,* at 54.

> Both of these holdings are questionable, moreover, to the extent that they are in tension with our decision in *Whitehead v. Shattuck,* 138 U.S. 146 [11 S.Ct. 276, 34 L.Ed. 873] (1891). Although there is scholarly support for the claim that actions to recover real property are quintessentially equitable actions, see 1 G. Glenn, Fraudulent Conveyances and Preferences § 98, pp. 183–184 (rev. ed. 1940), in *Whitehead* we stated:

"[W]here an action is simply for the recovery and possession of specific real or personal property, or for the recovery of a money judgment, the action is one at law. An action for the recovery of real property, including damages for withholding it, has always been of that class. The right which in this case the plaintiff wishes to assert is his title to certain real property; the remedy which he wishes to obtain is its possession and enjoyment; and in a contest over the title both parties have a constitutional right to call for a jury." 138 U.S., at 151 [11 S.Ct. at 277].

See also *Pernell v. Southall Realty,* 416 U.S. 363, 370–374 [94 S.Ct. 1723, 1727–29, 40 L.Ed.2d 198] (1974).

— U.S. at —— n. 5, 109 S.Ct. at 2792 n. 5.

\* \* \* \* \* \*

The nature of the relief respondent seeks strongly supports our preliminary finding that the right he invokes should be denominated legal rather than equitable. Our decisions establish beyond peradventure that "[i]n cases of fraud or mistake, as under any other head of chancery jurisdiction, a court of the United States will not sustain a bill in equity to obtain only a decree for the payment of money by way of damages, when the like amount can be recovered at law in an action sounding in tort or for money had and received." *Buzard v. Houston,* 119 U.S. [347], at 352 [7 S.Ct. 249, at 250, 30 L.Ed. 451 (1886) ], citing *Parkersburg v. Brown,* 106 U.S. 487, 500 [1 S.Ct. 442, 452, 27 L.Ed. 238] (1883); *Ambler v. Choteau,* 107 U.S. 586 [1 S.Ct. 556, 27 L.Ed. 322] (1883); *Litchfield v. Ballou,* 114 U.S. 190 [5 S.Ct. 820, 29 L.Ed. 132] (1885). See also *Atlas Roofing Co. v. Occupational Safety and Health Review Comm'n,* 430 U.S. 442, 454, n. 11 [97 S.Ct. 1261, 1268, n. 11, 51 L.Ed.2d 464] (1977) ("the otherwise legal issues of voidable preferences"); *Pernell v. Southall Realty,* 416 U.S. 363, 370 [94 S.Ct. 1723, 1727, 40 L.Ed.2d 198] (1974) ("'[W]here an action is simply for the recovery . . . of a money judgment, the action is one at law'"), quoting *Whitehead v. Shattuck,* 138 U.S. 146, 151 [11 S.Ct. 276, 277, 34 L.Ed. 873] (1891); *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 476 [82 S.Ct. 894, 899, 8 L.Ed.2d 44] (1962) ("Petitioner's contention . . . is that insofar as the complaint requests a money judgment it presents a claim which is unquestionably legal. We agree with that contention"); *Gaines v. Miller,* 111 U.S. 395, 397–398 [4 S.Ct. 426, 426–27, 28 L.Ed. 466] (1884) ("Whenever one person has in his hands money equitably belonging to another, that other person may recover it by assumpsit for money had and received. The remedy at law is adequate and complete").

— U.S. at ——, 109 S.Ct. at 2793.

\* \* \* \* \* \*

In *Atlas Roofing,* we noted that "when Congress creates new statutory 'public rights,' it may assign their adjudication to an administrative agency with which a jury trial would be incompatible, without violating the Seventh Amendment's injunction that jury trial is to be 'preserved' in 'suits at common law.'" 430 U.S., at 455 [97 S.Ct., at 1269] (footnote omitted). We emphasized, however, that Congress' power to block application of the Seventh Amendment to a cause of action has limits. Congress may only deny trials by jury in actions at law, we said, in cases where "public rights" are litigated: "Our prior cases support administrative factfinding in only those situations involving 'public rights,' e.g., where the Government is involved in its sovereign capacity under an otherwise valid statute creating under an otherwise valid statute creating enforceable public rights. Wholly private tort, contract, and property cases, as well as a vast range of other cases, are not at all implicated." *Id.,* at 458 [97 S.Ct., at 1270].

We adhere to that general teaching. As we said in *Atlas Roofing:* "'On the common law side of the federal courts, the aid of juries is not only deemed appropriate but is required by the Constitution itself.'" *Id.,* at 450, n. 7 [97 S.Ct., at 1266, n. 7], quoting *Crowell v. Benson,* 285 U.S. 22, 51 [52 S.Ct. 285, 292, 76 L.Ed. 598] (1932). Congress may devise novel causes of action involving public rights free from the strictures of the Seventh Amendment if it assigns their adjudication to tribunals without statutory authority to employ juries as factfinders. But it lacks the power to strip parties contesting matters of private right of their constitutional right to a trial by jury. As we recognized in *Atlas Roofing,* to hold otherwise would be to permit Congress to eviscerate the Seventh Amendment's guarantee by assigning to administrative agencies or courts of equity all causes of action not grounded in state law, whether they originate in a newly fashioned regulatory scheme or possess a long line of common-law forebears. 430 U.S., at 457–458 [97 S.Ct., at 1270]. The Constitution nowhere grants Congress such puissant authority. "[L]egal claims are not magically converted into equitable issues by their presentation to a court of equity," *Ross v. Bernhard,* 396 U.S. 531, 538 [90 S.Ct. 733, 738, 24 L.Ed.2d 729] (1970), nor can Congress conjure away the Seventh Amendment by mandating that traditional legal claims be brought there or taken to an administrative tribunal.

— U.S. at ——, 109 S.Ct. at 2795–96.

\* \* \* \* \* \*

In *Atlas Roofing, supra* [430 U.S.] at 458 [97 S.Ct. at 1270], we noted that Congress may effectively supplant a common-law cause of action carrying with it a right to a jury trial with a statutory cause of action shorn of a jury trial right if that statutory cause of action inheres in or lies against the Federal Government in its sovereign capacity. Our case law makes plain, however, that the class of "public rights" whose adjudication Congress may assign to administrative agencies or courts of equity sitting without juries is more expansive than *Atlas Roofing*'s discussion suggests. Indeed, our decisions point to the conclusion

answer to interrogatory No. 4 would be somewhat different. *Granfinanciera* was closely presaged by *Tull v. United States*, 481 U.S. 412, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987). *Granfinanciera* more than *Tull* undercuts *Chilton v. Savannah Foods & Industries, Inc.*, 814 F.2d 620 (11th Cir. 1987), and makes this court regret having retreated at the last moment in *Whitt v. Goodyear Tire & Rubber Co.*, 676 F.Supp. 1119 (N.D.Ala.1987). In *Whitt*, this court might have been braver if the Eleventh Circuit had then written its *United States v. M.C.C. of Florida, Inc.*, 863 F.2d 802 (11th Cir.1989), its post-*Tull* acknowledgement of the Supreme Court's superior wisdom as to availability of the Seventh Amendment in trials of traditionally legal issues arising during the trial of statutory causes of action. The Supreme Court, as presently constituted, most definitely believes in the Seventh Amendment, a belief this court enthusiastically shares. However, as a result of Reliable's fortuitously successful motion to strike the jury demand before *Granfinanciera* came along, the court is free to make its own findings of fact, with or without taking the jury's inscrutable advice. In the future this court will not hesitate to grant a jury trial in ERISA cases where the remedy sought is one not "preempted" and historically considered "legal."

### Findings of Fact

In its answer to Mrs. Jordan's complaint, Reliable set up as its "First Affirmative Defense" the following:

Defendant Reliable Life alleges that the Accidental Death Group Insurance Policy issued to Vulcan Materials Company [Mr. Jordan's employer] does not provide coverage for loss caused by, contrib-uted to or resulting from injuries sustained while piloting or serving as a member of the crew of any aircraft. Defendant Reliable Life alleges that plaintiff's claim is for loss which was caused by, contributed to or resulting from James I. Jordan piloting or serving as a member of the crew of the aircraft in which he sustained fatal injuries, and therefore defendant Reliable Life has no duty or obligation to plaintiff under the terms of the policy.

In "Defendant's Position" in the final pre-trial order, consistent with its answer, Reliable asserted:

Defendant contends that Plaintiff's testate was piloting or serving as a member of the crew of the flight in question [and] that under the applicable ERISA standard of review, policy nos. 1037–ADLP–02 and 1037–ABAKF–02 do not provide coverage for this claim.

Thereafter, Rule 16(e), F.R.Civ.P., precluded any change in the issues without an amendment to the pre-trial order. No such amendment was sought or obtained.

In *Jordan v. Reliable Life Ins. Co.*, this court described the only issue as follows:

The action was brought on a group policy of accidental death insurance written by Reliable. The policy designated Mr. Jordan's estate as beneficiary in the event of Mr. Jordan's accidental death. The policy contained an exclusion for death occurring in an airplane in which the insured was serving as pilot or member of the flight crew. The only disputed issue of fact is a simple one, namely, whether or not Mr. Jordan, who admittedly died in an air crash, was himself acting as a member of the crew at the time of the crash.

that, if a statutory cause of action is legal in nature, the question whether the Seventh Amendment permits Congress to assign its adjudication to a tribunal that does not employ juries as factfinders requires the same answer as the question whether Article III allows Congress to assign adjudication of that cause of action to a non-Article III tribunal. For if a statutory cause of action, such as respondent's right to recover a fraudulent conveyance under 11 U.S.C. § 548(a)(2), is not a "public right" for Article III purposes, then Congress may not assign its adjudication to a specialized non-Article III court lacking "the essential attributes of the judicial power." *Crowell v. Benson, supra* [285 U.S.] at 51 [52 S.Ct. at 292]. And if the action must be tried under the auspices of an Article III court, then the Seventh Amendment afford the parties a right to a jury trial whenever the cause of action is legal in nature.
— U.S. at —, 109 S.Ct. at 2796.

*Jordan,* 694 F.Supp. at 823.

At trial, Reliable finally conceded that its denial of Mrs. Jordan's claim should be judged *de novo* upon the burden of proof applicable to actions on contracts and not on the "abuse of discretion" or the "arbitrary and capricious" standard which Reliable had previously insisted upon. If the denial of Mrs. Jordan's claim by Reliable had been judged upon whether or not Reliable acted arbitrarily and capriciously, the outcome in this case would be different, because the dispute between these parties was certainly a legitimately debatable one. Apparently, however, by the time of trial, *Firestone Tire & Rubber v. Bruch,* —— U.S. ——, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), had struck home, and one previously routinely interposed ERISA defense had become an anachronism.

Contrary to the way Reliable couched the issue in its "First Affirmative Defense" and in its "Defendant's Position," and contrary to the way this court stated the issue in *Jordan,* 694 F.Supp. at 823, Reliable, at trial, asked the court to place the burden of proof on Mrs. Jordan to prove, by a preponderance of the evidence, that her deceased husband was, in fact, a *"passenger"* at all times pertinent.

The evidence was undisputed that Mr. Jordan and his instructor-pilot took off in a private, single-engine aircraft, with Mr. Jordan at one of the dual sets of identical controls. While in the flight pattern for a landing, the engine failed. The highly-trained instructor-pilot immediately took over the controls from the much less experienced Mr. Jordan. For approximately the last thirty seconds of the flight Mr. Jordan did not touch the controls. When the plane could not reach the runway, it crashed, and Mr. Jordan was killed. The instructor lived to become the key witness.

The policy language here pertinent is as follows:

Section II        COVERAGE
                *      *      *

DESCRIPTION OF COVERAGE

Subject to the conditions, limitations and exclusions of the policy, the insurance granted hereunder shall apply to injuries sustained by an Insured Person anywhere in the world provided that aviation coverage shall be limited to riding *as a passenger (and not as a pilot or member of the crew)* in any previously tried, tested and approved aircraft.

(emphasis supplied).

There is no dispute but that the subject aircraft was "previously tried, tested and approved." The real issue, then, as previously stated, was whether Mr. Jordan was riding as a "passenger," on the one hand, or as a "pilot or member of the crew," on the other.

In another section of the policy, entitled "EXCLUSIONS," the following appears:

The policy does not cover an Insured Person for any loss caused by, contributed to or resulting from:

*      *      *      *      *      *

(5) injury sustained while, or in consequence of, riding *as a passenger or otherwise,* in:

*      *      *      *      *      *

(a) any vehicle or device for aerial navigation *other than as provided in Section II, Coverage.*

(emphasis supplied).

Reliable first argued to the court, and then to the jury, that this language is unambiguous in two crucial respects: (1) that the status of an Insured Person must be established during the flight at some time earlier than at the moment of the injury or death; and (2) even if the Insured Person's status is to be determined as of the moment of injury or death, Mr. Jordan was clearly then a "pilot" or "member of the crew," and therefore not a "passenger." These were the same arguments Reliable made in support of its motion for summary judgment, which earlier was denied.

The advisory jury obviously either found that the contract was ambiguous as to the time at which Mr. Jordan's status was to be established and thus to be resolved against the drafter, Reliable, or that the contract was clear and meant that the moment of impact was the time at which the contracting parties intended for the determination

of status to be made. If the jury's response to question No. 1 was occasioned by a resolution of ambiguity against Reliable, this court agrees with the jury. Not only does the use of the words "or otherwise" in the "EXCLUSION" clause cause confusion, but neither the word "passenger," nor the word "pilot," nor the words "member of the crew" are defined in the policy. The time for determining status, certainly important, is not elucidated with any particularity whatsoever. Reliable, the drafter, could, by a judicious use of appropriate language, have avoided what seems to be the logical presumption in any life insurance policy, namely, that the moment of death is the moment at which the insured's status must be determined, that is, if his or her status is important to the coverage.

Although there are actually two separate policies of insurance here involved, the case was tried in all respects as if the policies were one, so that the court, in referring to the coverage, has talked in the singular.

At trial, the court rejected Reliable's argument that it was not relying on a policy "exclusion." As noted, Reliable argued that the burden was on Mrs. Jordan to prove by a preponderance of the evidence that her husband was a "passenger," and therefore was *covered* at the time of his death. The court can understand why Reliable would make this argument inasmuch as, if successful, this contention circumvents "the established law of Alabama, the forum state, that an insurance company is charged with the burden of proving that a particular loss falls within an exclusionary clause of an insurance policy." *Burton v. State Farm Fire & Cas. Co.*, 533 F.2d 177, 178 (5th Cir.1976). This court, here sitting in diversity as an Alabama judge, sees no reason to change its mind on this point, because the two above-quoted policy provisions, construed *in pari materia*, clearly constitute an "exclusion" for "pilots" and "members of the crew." Nevertheless, even if Reliable should be correct as to where the burden of proof lies, this court would find that Mrs. Jordan has met her burden in view of the ambiguity in the contract, created by the insurer's own choice of imprecise language.

The primary problem created by the jury's response to special interrogatory No. 4 is that the answer did not accommodate to the fact inherent in Reliable's own choice of words, i.e., that *any* insured occupant of an airplane necessarily holds status either as a "pilot-crew member," or as a "passenger." A "pilot" is a "crewmember." A "crewmember" is not necessarily a "pilot." The court can readily understand how the jury could, in a vacuum, have decided, for instance, that at the moment of his death Mr. Jordan was a "student," a status which can logically be distinguished from "pilot" or "crew member" or "passenger." Yet, Reliable in its policy language did not permit an Insured Person to occupy such a fourth status. The language created mutual exclusivity and limited an Insured Person's status to one of two or three. The court apparently did not succeed in communicating to the jury that Mr. Jordan necessarily held at least one of three statuses. Perhaps it was the terribly ambiguous words "or otherwise" in the "Exclusions" which immersed the jury in troubled waters. Reliable has never explained to this court's satisfaction what these words, "or otherwise," mean in total context.

The court agrees with the jury's finding that Mr. Jordan at the moment of his death was not a "pilot" and was not a "crew member." Therefore, the court makes these same findings of fact. The court, however, disagrees with the jury's finding that Mr. Jordan was not a "passenger" at the moment of his death, because if Mr. Jordan was not a "pilot" and not a "crew member," he automatically became a "passenger" in the terms of the policy.

Construing the policy against Reliable, as the court must, the moment of impact was the moment for determining status. With this core jury finding the court entirely agrees.

### Conclusions of Law

Because of the diversity of citizenship of the parties and the existence of the requisite jurisdictional amount, the court has jurisdiction under 28 U.S.C. § 1332. The

court seriously doubts that it has jurisdiction under ERISA because, by agreement of the parties the Plan Administrator, Vulcan Materials Company (Mr. Jordan's employer), indispensable as a defendant in an ERISA action, was never made a party defendant.

In its post-trial memorandum, Reliable argues, *inter alia:*

> ... it is inconceivable that the jury's answer to special interrogatory Number 4 could mean anything other than that the jurors agreed with Reliable that Jordan was not a passenger even at the moment of impact and, therefore, there was no coverage under the policies.

The court could, of course, have asked the jury for its advice on the ultimate question of "coverage," but the court was unwilling to assign such an ultimate question to an *advisory* jury. The court is not nearly as sure as Reliable is sure what the jury's answer would have been if it had been asked this ultimate question. The court suspects that the jury would have found Mr. Jordan covered. The question of what the jury would have done with such a question must remain academic.

There are no Alabama cases construing the controversial language in this insurance policy. Reliable has pressed upon the court not dissimilar but distinguishable decisions from other jurisdictions. The better reasoned cases among the split of authority on the subject are the Arkansas, Michigan, Kansas, Louisiana, and Florida authorities cited by Mrs. Jordan: *Foremost Ins. Co. v. Sheppard,* 610 F.2d 551 (8th Cir.1979) (applying Arkansas law); *Vander Laan v. Educators Mutual Ins. Co.,* 356 Mich. 318, 97 N.W.2d 6 (1959); *Alliance Life Ins. Co. v. Ulysses Volunteer Relief Ass'n,* 215 Kan. 937, 529 P.2d 171 (1974); *Cruz v. Home Ins. Co.,* 511 So.2d 22 (La.App.1987); and *Mathews v. Ranger Ins. Co.,* 281 So.2d 345 (Fla.1973).

This court could attempt to certify the question of contract interpretation to the Supreme Court of Alabama based on the physical facts found by this court. The Eleventh Circuit, in any subsequent appeal of this decision by Reliable, may choose to do just that. Without any controlling Alabama authority except the Alabama decisions which clearly require the resolution of ambiguity in favor of the insured, this court chooses to decide, without awaiting the Supreme Court of Alabama, that Reliable failed to prove by a preponderance of the evidence that Mr. Jordan was not covered under the facts found by the court, with or without the jury's advice, in view of the policy language.

The jury was, of course, never advised that it was "advisory only." If the court was incorrect in using an advisory jury and, instead, should have anticipated *Granfinanciera* and should not have granted Reliable's motion to strike Mrs. Jordan's jury demand; and therefore, if the court should consider the jury's findings of fact as absolutely binding to the extent they are based on substantial evidence, the court would enter the same judgment it will enter by separate order as soon as the amount of the coverage, plus interest, is ascertained. After the correct sum is determined, a money judgment will be entered in favor of Mrs. Jordan and against Reliable for the full amount of the life insurance, plus legal interest from the date Mrs. Jordan presented her claim to Reliable.

Even though Reliable has taken the position that this is an ERISA case, and has pointed out that Mrs. Jordan herself invoked ERISA in her original complaint, the court will not entertain an application under 29 U.S.C. § 1132(g)(1) for attorney's fees to Mrs. Jordan's counsel, although she may be a prevailing ERISA plaintiff, not only because this court still doubts that ERISA governs this case but because Mrs. Jordan failed to request an attorney's fee either in her complaint or in her "Plaintiff's Position" in the pre-trial order.

A separate, appropriate order will be entered.