WAYNE G. FAHNESTOCK, on Behalf of Himself and of All Other Holders of First Mortgage Five and Three-fourths Per Cent Serial Gold Bond Certificates, Series A, of CLARK HENRY CORPORATION, Plaintiff, *v.* CLARK HENRY CORPORATION and Others, Defendants.

Supreme Court, Kings County, March 15, 1934.

594

*Rabenold & Scribner* [*Mark Hyman* and *Dominic B. Griffin* of counsel], for the plaintiff.

*Cravath, deGersdorff, Swaine & Wood* [*William D. Whitney* and *Hugh A. Fulton* of counsel], for the defendant Joseph W. Dixon.

*Van Vorst, Siegel & Smith,* for the defendants Clark Henry Corporation and others.

*Kaye, McDavitt & Scholer* [*James S. Hays* and *Morway Picket* of counsel], for the defendant Greenebaum Sons Securities Corporation.

HUMPHREY, J. Defendant Joseph W. Dixon is a member of defendant Graham, Parsons & Co., domestic bankers. Greenebaum Sons Securities Corporation is a domestic corporation. These defendants separately move to dismiss the complaint for failure to state a cause of action.

The defendants Clark Henry Corporation, Bing & Bing, Inc., Udell Realty Co., Inc., and Irex Realty Corporation are domestic corporations. Fidel Corporation is a Delaware corporation. The defendants Leo S. Bing, William Guthman, Bertha H. Schwartz, Martin Samuels and Max Sloman are officers and directors of Bing & Bing, Inc. These defendants also move to dismiss the complaint for failure to state a cause of action or, in the alternative, for other relief as specified.

It is alleged that the individual defendants last above named dominated, controlled and directed the affairs of the Clark Henry Corporation in the manner " herein stated."

Halsey, Stuart & Co., Inc., and Greenebaum Sons Investment Company are Illinois corporations. The last-named corporation is affiliated with Greenebaum Sons Securities Corporation and both corporations it is alleged are owned and controlled by the same interests. The latter corporation is alleged to have acted as selling agent in New York for Greenebaum Sons Investment Company, which is located in Chicago.

The complaint, with the annexed exhibits, consists of twenty-three closely printed pages. The general nature of the four causes of action therein stated and the transactions upon which they are predicated may be summarized as follows:

The defendant Clark Henry Corporation owned in fee simple a parcel of real estate in the borough of Brooklyn, with the build-

ings and improvements thereon, commonly known as the Hotel St. George. It desired to retire an indebtedness on the property of over $2,000,000, and to erect a new addition at an estimated cost of upwards of $8,000,000. For this purpose, on or about November 1, 1928, it executed to the defendant Chase National Bank its bond in the sum of $8,000,000, maturing in various amounts at various times. By assignment the plaintiff has become the owner of a $10,000 share of said bond, and similar assignments have been issued to upwards of 5,000 holders. All of such assignments are in writing, negotiable in form, and are called bond certificates, Series A. As security for said $8,000,000 bond and said bond certificates, Series A, the Clark Henry Corporation, on November 1, 1928, executed to the Chase National Bank, as corporate trustee, its mortgage covering said real estate, the buildings and improvements thereon, the equipment and appurtenances, and personal property therein, and " the earnings therefrom," in trust for the equal benefit of plaintiff and all other holders of said bond certificates, Series A.

Bing & Bing, Inc., owned the entire capital stock of the Clark Henry Corporation, $1,000 in amount, and the latter corporation had no existence separate and apart from Bing & Bing, Inc., who selected the officers and directors thereof from its own officers, directors and employees.

Prior to the execution of said bond and trust mortgage, and in October, 1928, Bing & Bing, it is alleged, entered into an " *arrangement* " with defendants Halsey, Stuart & Co., Greenebaum Sons Securities Corporation and Graham, Parsons & Co., whereby the Clark Henry Corporation " would " issue the $8,000,000 first mortgage serial gold bond certificates, Series A, and $500,000 of bond certificates, Series B, subordinate as to lien to Series A, and the said bond certificates, Series A, " should " be sold to the public by the above-named companies. The " arrangement," according to the complaint, provided that representation " should be made " to the public that the proceeds from the sale of said Series A and Series B certificates would be used to retire the said outstanding corporate indebtedness, and for the completion of said addition and improvements, and for other corporate purposes. The said purposes " were to be represented " as involving estimated expenditures aggregating the sum of $8,552,725.

The said " arrangement " also provided that " it was further to be represented " that said bond certificates, Series A, would be legal investment for trust funds upon the completion of said addition and improvements by October 1, 1929; that " it was further to be represented " that the $500,000 bond certificates, Series B, would

be subordinate in lien to the Series A certificates, but " it was to be omitted " that said Series B certificates were to mature prior to Series A and thus be prior as to payments; that " it was further to be represented " that said Series A would be a direct obligation of the Clark Henry Corporation and that the estimated earnings of said corporation were nearly two and three-quarter times the maximum yearly interest requirements of said Series A certificates; but it " was to be omitted " that said estimated earnings aforesaid would be absorbed by Bing & Bing, Inc., and the Clark Henry Corporation would be operated as a mere department of Bing & Bing as thereinafter set forth, and " it was to be omitted " that the Clark Henry Corporation had no capital to give value to its obligation to pay the certificates Series A, but, on the contrary, such values as inhered in the corporation " were to be absorbed " through book entries showing accounts receivable in favor of Bing & Bing and its subsidiaries.

The foregoing allegations relate to alleged sinister designs and purposes pertaining to the inception of the project. Subsequent portions of the complaint set forth alleged wrongful acts in the carrying out of the enterprises. Among these, it is asserted in paragraph 12 that receipts intended for the Clark Henry Corporation were collected by Bing & Bing and mingled with its own funds and those of affiliated corporations; that Bing & Bing " would cause " the Clark Henry Corporation to enter into unprofitable contracts, leases and agreements with itself and its subsidiary corporations; that property, accounts and funds were shifted by one corporation to another and back again, according to the will of Bing & Bing; that thereby Bing & Bing assumed a fiduciary capacity toward the Clark Henry Corporation and the bondholders, and acted as trustees for the proceeds of the sale of said bond certificates and for the rents, issues, profits, earnings and income from the operation of the hotel and became responsible to said Series A certificate holders for acts of waste and mismanagement as therein specified in respect to the operations of the hotel and the Clark Henry Corporation. The allegations of this paragraph 12 will be further considered hereafter.

It is further alleged in paragraph 16 that when real estate reached a condition of demoralization, Bing & Bing knew that it was necessary to conserve the revenue of the hotel in order to avert insolvency which would wreck the enterprise and destroy a large part of the investment of plaintiff and others similarly situated; that, nevertheless, Bing & Bing, disregarding its obligations " as fiduciary or trustee as aforesaid," caused the Clark Henry Corporation to assign to it and its wholly owned subsidiary Fidel Corporation, all

the rents, issues, earnings and income from the Hotel St. George, under color of the agreement Exhibit B annexed to the complaint, and that thereafter the Clark Henry Corporation had not even the semblance of any control over its funds or business policies. It is subsequently alleged that by reason of the absorption of the earnings from the mortgaged premises by Bing & Bing or the Fidel Corporation, by reason of said assignment, the Clark Henry Corporation defaulted in depositing on April 25, 1933, as it was bound to do, certain sums for interest and an installment of principal falling due on May 1, 1933, with the result that on or about May 22, 1933, the corporate trustee instituted an action for the foreclosure of the trust mortgage. This assignment, Exhibit B, and other alleged wrongful acts will be referred to hereafter.

Broadly summarized, the causes of action seem to me to be predicated upon an alleged fraudulent design and purpose in the conception of the plans and upon subsequent wrongful acts in carrying out the enterprise, whereby Bing & Bing, by operation of law, became transformed into a fiduciary and was so charged with trust duties as to render it and all participating defendants accountable in an equitable action brought by plaintiff for himself and the other bondholders.

The complaint prays for judgment that Bing & Bing is accountable " as fiduciary or trustee " for the proceeds of said bond certificates, Series A and B, and for rents, issues, profits, earnings and income of the Hotel St. George since November 1, 1928; that the other defendants account for any of the property and income received by them, and for other equitable relief as particularly specified.

In deciding the questions presented, the following legal principles to some extent at least are pertinent.

A copy of the trust mortgage is not annexed to the complaint. Therefore, although frequently referred to, it is not a part of the pleading. (*Du Pont Auto. Distributors, Inc.*, v. *Du Pont M., Inc.*, 213 App. Div. 313, at p. 315; *Bandler* v. *Globe & Rutgers Fire Ins. Co.*, 205 id. 515.)

Many references in the complaint to provisions in the trust mortgage are conclusory in character. (*Du Pont Auto. Distributors, Inc.*, v. *Du Pont M., Inc., supra; Bandler* v. *Globe & Rutgers Fire Ins. Co., supra; Crossways Apartments Corp.* v. *Amante*, 213 App. Div. 430, and *Fox* v. *Stern Dental Supply Co.*, 207 id. 750.)

A motion to dismiss will be denied if facts necessary to constitute a cause of action can be gleaned from the complaint. And a complaint, stating a cause of action at law, will not be dismissed, although the prayer for relief be equitable. On a motion to dismiss,

every fair intendment is in favor of the pleading. (*Dyer* v. *Bank*, 252 N. Y. 430, at p. 432; *Bloom* v. *Gelb*, 227 App. Div. 619; *Sweet* v. *Hollearn*, 141 Misc. 135, at p. 137.)

The first question to be considered is whether a cause of action is stated for a rescission or damages upon the theory of fraudulent representations or concealments. Relief of this character is not specifically prayed for. In determining this question, other allegations in addition to those before outlined must be considered. Thus, in paragraph 10 of the complaint, it is alleged that about October 25, 1928, plaintiff received from or on behalf of Halsey, Stuart & Co., Greenebaum Sons Securities Corporation and Graham, Parsons & Co., a circular, a copy of which is Exhibit A annexed to the complaint, and that *in reliance thereon* and on or about October 25, 1928, plaintiff subscribed and paid for his $10,000 principal amount of said bond. In the same paragraph it is alleged that on November 15, 1933, the Clark Henry Corporation stated that said circular was not authorized by it, " but plaintiff believes that said circular was openly and notoriously used in the sale of said bond certificates, Series A." This allegation is purely a conclusion and is not a permissible form of pleading and, therefore, must be disregarded.

The said circular in substance may be described as follows: At the end thereof there is printed the names of Greenebaum Sons Securities Corporation and Greenebaum Sons Investment Company. It is not signed by and does not purport on its face to have been issued for or on behalf of or with the knowledge or consent of any other defendant.

The circular sets forth that the $8,000,000 first mortgage gold bond certificates, Series A, are secured by Hotel St. George and are appraised and recommended by " Greenebaum Sons Investment Company, founded 1855," followed by " Greenebaum Sons Securities Corporation, New York City." After the above-quoted words appears the following: " We own and offer subject to prior sale, if, as and when issued, $8,000,000 first mortgage 5-3/4% serial gold bond certificates, Series A, secured by Hotel St. George, and entire block of land between Clark, Henry, Hicks and Pineapple Streets, Brooklyn, New York." Immediately below the above-quoted words appears the following in parenthesis: " Clark Henry Corporation, a wholly owned subsidiary of Bing & Bing, Inc., New York." Then follows a statement of the various denominations of said bonds, a statement of when and where interest and various installments of principal are due and payable; a statement that said certificates are secured by a first mortgage on land owned in fee, a group of seven completed and successfully operated buildings

and a new twenty-five-story building being erected, and entire earnings of the property. Then follows a statement as to location, the nature of the existing and contemplated improvements, the valuation as shown by independent appraisals, and a statement that on the basis of the lowest appraisal the valuation is more than 152 per cent of the amount of the first mortgage certificates, Series A, and that, in the opinion of counsel, these certificates will be legal investments for trust funds upon completion of the addition. This circular or prospectus then contains statements as to the net earnings of the corporation for the years 1925, 1926, 1927 and the first eight months of 1928; that the average net earnings from the existing buildings for the past three years and eight months have been approximately sufficient to pay all annual interest and the amortization charges on Series A and Series B, and that the net income from the entire property after completion of the new buildings and improvements has been estimated by Bing & Bing at a specified sum which will be over two and one-half times the maximum annual interest requirements for Series A and Series B certificates, and nearly two and three-quarter times the maximum yearly interest requirements on Series A certificates.

This is followed by a statement that the certificates will be a direct obligation of the Clark Henry Corporation, a wholly owned subsidiary of Bing & Bing; a statement of the total value of real estate controlled or operated by Bing & Bing, as indicated by their balance sheet; a statement that the proceeds of the issue will be used to retire corporate indebtedness, to complete the new building, and for other corporate purposes, and that completion of the building substantially as described, free and clear of all prior liens, is guaranteed to the certificate holders by Bing & Bing. Such is the substance of the circular upon which plaintiff, in paragraph 10, alleges that he relied in acquiring his interest in the principal bond.

The allegations in paragraph 8 as to what, according to said arrangement, was " further to be represented " and what " was to be omitted " are conclusions of the pleader as to the existence of an intent, not otherwise disclosed, in the minds of the parties to commit a future fraud.

I am aware that a false representation as to a state of mind may be a false representation of a material fact. (*Deyo* v. *Hudson*, 225 N. Y. 602, at p. 612, and *Adams* v. *Clark*, 239 id. 403.) This rule is not here applicable. The above allegations disclosed no representation whatever but only the existence of an intent not susceptible of being relied upon, and, therefore, not capable of constituting the basis for a cause of action. There is no allegation that this contemplated future fraud ever found expression in actual repre-

sentations in the circular or otherwise in a form upon which plaintiff could and did rely. In fact, there is no allegation that any material statement of fact in the circular was false. The essential elements of an action in fraud and deceit are representation, falsity, scienter, deception and injury. (*Arthur* v. *Griswold,* 55 N. Y. 400; *Urtz* v. *N. Y. C. & H. R. R. R. Co.,* 202 id. 170, at p. 173; *Reno* v. *Bull,* 226 id. 546, at p. 550.)

There are no allegations of this character in the complaint. In my opinion, no cause of action in fraud or deceit is stated.

I will now consider the wrongful acts alleged to have been committed subsequently in the carrying out of the project, to ascertain if any cause of action be there stated.

It is alleged that the trust mortgage covers the realty, buildings, and so forth " and the earnings therefrom," and the circular, Exhibit A, states that the certificates are issued " under a first mortgage on the entire earnings of the property." But, so far as otherwise alleged or disclosed, it appears that at all times the mortgagor, without protest or objection, was left in undisputed possession and control of the mortgaged premises and was permitted to collect and receive the rents, income and profits therefrom. In fact, a primary alleged wrong asserted throughout the complaint relates not to the receipt by the mortgagor of the income and revenues, but to the improper disposition thereof when received, or to the absorption or diversion of income and revenue which it should have received. The unrestricted possession and control by the mortgagor necessitated the use of income for the payment of operating costs, including repairs, maintenance and necessary replacement. Therefore, the word " earnings " must be deemed to have been used to designate what remained after deducting all legitimate costs of operation.

Clearly, the balance remaining after such proper and necessary expenditures would be applicable to the satisfaction of interest and principal of the mortgage indebtedness. But, in my opinion, the mortgagee at no time, prior at least to the foreclosure action, ever acquired a right to the rents, income, revenues or earnings of the mortgaged property. The right thereto could be acquired only by taking possession of the property or through the medium of the appointment of a receiver or at least by an affirmative and positive demand for possession. Nothing is alleged in the complaint which indicates that such right ever was so asserted by the mortgagee, with the result that the right to the rents and income and the disposition thereof always remained in the mortgagor. The applicable rule seems to be stated in *Sullivan* v. *Rosson* (223 N. Y. 217); *148th St. Realty Co.* v. *Conrad* (125 Misc. 142), and *Empire Trust Co.* v. *Kermacoe Realty Co.* (149 id. 66).

In the *Sullivan* case the Court of Appeals approved the rule adopted by the United States Supreme Court.

In *Freedman's Saving Co.* v. *Shepherd* (127 U. S. 494), cited in the *Sullivan* case, the court said (on p. 503): " Even if the deed had expressly pledged the income as security for the debts named, the mortgagor, according to the doctrines of the cases cited, would have been entitled to the income, until, at least, possession was demanded under the deed; or until his possession was disturbed by a sale under the deed of trust or, in advance of a sale, by having a receiver appointed for the benefit of the mortgagee."

In *Fosdick* v. *Schall* (99 U. S. 235, on p. 253) the court said: " For even though the mortgage may in terms give a lien upon the profits and income, until possession of the mortgaged premises is actually taken or something equivalent done, the whole earnings belong to the company and are subject to its control."

My conclusion in this respect is strengthened by the allegations in paragraph 5 of the complaint, whereby it appears that all the property covered by the mortgage, including the earnings, was held by the mortgagee not in absolute ownership but as security. A right to income of this character must be asserted in accordance with the rule of the foregoing cases. If, by reason of any special agreement, the right to the rents, income and earnings becomes immediately effective, without a demand, entry into possession or appointment of a receiver, it should have been so alleged. There is no presumption to that effect.

I am unable to agree with the contention that, by reason of the acts alleged in paragraph 12, as before narrated, Bing & Bing assumed a fiduciary capacity and acted as trustee for the proceeds of the sale of said bond certificates, and for the rents, profits, income and earnings arising from the operation of the hotel, and became responsible to the bondholders for acts of waste and mismanagement as therein specified.

No fiduciary relationship existed between Bing & Bing and the bondholders, and the acts alleged were ineffective to clothe Bing & Bing with a fiduciary or trust capacity. The proceeds of the sale of the bonds was the property of the Clark Henry Corporation. The bondholders had no interest therein. Any misappropriation, diversion from the intended purposes, or wrongful absorption of such proceeds by Bing & Bing was a wrong, not against the bondholders, but against the corporation itself, which owned the proceeds. (*Van Weel* v. *Winston*, 115 U. S. 228, at p. 245.)

Among the alleged specific acts of waste and mismanagement are the lease of the entire premises to the Udell Realty Company, a subsidiary of Bing & Bing, whereby large surpluses " were to be

absorbed " by the Udell Company, and the subsequent cancellation
of all future liability of the Udell Company thereunder; concessions
given by the Clark Henry Corporation upon the operation of its
swimming pool and restaurant, which showed a loss; the " informal
absorption " by Bing & Bing of the revenue of the Clark Henry
Corporation so that thereafter, by formal contract, all earnings
were subject to their unrestricted control.   It is unnecessary to
detail the other specific acts.   Waiving the conclusory character
thereof, all these allegations and specifications relate to the manage-
ment of the hotel, at all times in the possession and control of the
mortgagor, and to the utilization, disposition or absorption of
income to which the mortgagee was not then entitled as herein-
before shown.   Moreover, none of these alleged acts of waste
impaired the mortgagee's security.   They evidenced not waste
but at the most unwise management.   The mortgagee, as corporate
trustee, at the times alleged had no right to the rents and income,
because he had never acquired possession of the premises or secured
the appointment of a receiver.   The bondholders never had a right
thereto.   A cause of action for wrongful utilization or misapplica-
tion of the rents and income, after possession has been acquired by
the trustee or after the appointment of a receiver, would lie only
to the trustee and not to the bondholders.   The latter could bring
an action for the redress of such wrongs only if the trustee refused.
(*Western R. R. Co.* v. *Nolan,* 48 N. Y. 513; *O'Beirne* v. *Alleghany
& Kinzua R. R. Co.,* 151 id. 372, at pp. 383, 384; *Young* v.
*Haviland,* 215 Mass. 120, at p. 122.)

Reference has heretofore been made to the assignment of October
21, 1932, being Exhibit B.   Of this assignment the plaintiff par-
ticularly complains in the second cause of action.   The assignment
purports to have been made to secure the Fidel Corporation for a
present loan of $86,000 and for a prior existing indebtedness of
over $600,000.   It is alleged that said rent assignment violated
the " essence and spirit " of the trust mortgage and was " conceived
and coerced " by Bing & Bing and was not in good faith.   The
plaintiff then specifies the respects in which he claims the said
assignment violated certain provisions of the trust mortgage.   The
assignment purports to be as security for the said loan and prior
indebtedness and covers the net proceeds, income and rentals from
the operations of the borrower, but, as heretofore shown, the mort-
gagor at this time was entitled to the rents, income and revenues
of the property.   No default had then occurred and the mortgagee
had not the possession and no receiver had been appointed.   A
disposition of such rents and income, to which the mortgagee had
no right or title, was not a wrong against it or against the bond-

holders. Prior to default and the appointment of a receiver, an assignment of rents, even as security for a pre-existing debt, is valid. (*Bank of Manhattan Trust Co.* v. *571 Park Ave. Corp.*, 263 N. Y. 57.)

No cause of action, in my opinion, can be based upon this assignment.

In the third cause of action the plaintiff complains of the agreement of May 1, 1933, between the Clark Henry Corporation, Bing & Bing, Inc., and the Fidel Corporation, being Exhibit C annexed to the complaint.

This agreement recites the assignment of October 21, 1932; that the Clark Henry Corporation defaulted on April 25, 1933, in making the deposit necessary to meet the interest and installment falling due on May 1, 1933; that by reason thereof, the trustee would have the right to take " certain action " on and after May 16, 1933; that a committee representing the bondholders has advised against a receivership at the present time, provided the income can be adequately safeguarded.

After these recitals, the Clark Henry Corporation, in section 1, agrees to segregate in a special account in the name of Bing & Bing all income and revenues from the mortgaged property after noon May 1, 1933, and that there shall be paid out of said account only certain specified items which include, among others, all operating expenses.

By section 2 the Clark Henry Corporation agrees in substance that the net amount in said account at noon May 16, 1933, shall be held by the named depositary in escrow, subject to the following conditions:

*First.* Said depositary is authorized to pay over said net amount to the corporate trustee upon the termination of any foreclosure proceeding instituted under the mortgage, provided that Bing & Bing shall have been permitted to continue in the management of the hotel as agent of the Clark Henry Corporation or of any receiver in foreclosure.

*Second.* Upon the termination of such management, either by the trustee or by any receiver, the depositary is authorized immediately to pay over the entire amount so held in escrow to the Fidel Corporation on account of the indebtedness to it of the Clark Henry Corporation, and the balance, if any, to the latter corporation.

Section 3 provides in substance that the Clark Henry Corporation, for the consideration aforesaid, has transferred to the corporate trustee, for the benefit of the bondholders, the net amount in said special account applicable to the period after noon May 16, 1933, after making the deductions as provided in section 1. The said

assignment is declared to be absolute and not subject to any conditions whatever, except to the making of the deductions as provided in section 1, and any amount so paid to the corporate trustee is to be held as additional security for the bondholders. By this section it is made a condition of the agreement that from and after noon, May 16, 1933, the trustee shall have the right to dispense with the services of Bing & Bing.

In section 5 it is provided in substance that nothing in the agreement shall affect any right which the trustee or the bondholders or said protective committee may have under the mortgage, or their right to take any proceedings at law or in equity or otherwise, which they would be entitled to take were this agreement not executed and delivered.

Having in mind the foregoing recitals, I think this agreement fairly evidences a recognition by the parties thereto that the income and revenues accruing prior to May 16, 1933, were subject to control and disposition by the mortgagor, and that such income and revenue accruing subsequently inured to the benefit of the corporate trustee.

In paragraph 31, plaintiff. alleges that there is a provision in the agreement that if Bing & Bing are permitted continuously to manage the property, they will further account for the earnings between May 1 and May 16, 1933. I find no provision expressly so reading. Possibly the plaintiff intended to allege that the determination of the net amount in the special account assigned under section 3 would require an accounting, legal or otherwise.

Plaintiff then complains in said paragraph that in adjusting the account under " said provision " the trustee has permitted certain credits in favor of the Clark Henry Corporation and Bing & Bing " which are improper in any accounting between mortgagor and mortgagee for the reasons there stated."

The corporate trustee in name is not a party to the agreement and there is no express allegation that it ever consented to or ratified the agreement. The words last above quoted do not permit the legal inference of an accounting between the mortgagor and mortgagee and there is no express allegation of such an accounting. No facts are alleged which permit the inference that the trustee is chargeable with any act effective by way of estoppel or otherwise to prevent it from questioning the legality or propriety of any charge or credit relating to the income and revenue accruing during the period from May first to May sixteenth or thereafter. The provision of section 5, to which reference has been made, expressly provides to the contrary, and clearly preserves the right of the trustee to take any legal action necessary for the protection of the

bondholders. Moreover, there is no allegation legally sufficient to justify the inference that the trustee has refused to act or asserted that it will not so act when, in its opinion, it is necessary to assert its rights as trustee or is otherwise necessary to act for the protection of the rights of the bondholders. Moreover, an action of this character relating to the receipt, disposition or wrongful absorption or disposition of income and revenues is, under the authorities cited, vested in the trustee and not in the bondholders. No cause of action, it seems to me, can be predicated upon this agreement.

. In the fourth cause of action the plaintiff repeats the allegations of the preceding third cause of action. In paragraph 34 he alleges the total receipts for which Bing & Bing are accountable, which include the proceeds of the certificates, Series A and B, and also the gross revenue received from the operation of the Hotel St. George, exceeding in amount $5,000,000. Plaintiff also here alleges that the subsidiary corporations, Fidel Corporation, Udell Realty Co., Inc., and Irex Realty Corporation, should be required to account with respect to such funds and property as they respectively received.

In paragraph 36 it is alleged that Halsey, Stuart & Co., Inc., Greenebaum Sons Securities Corporation, Greenebaum Sons Investment Company, and Graham, Parsons & Co. should be held accountable to the extent that they participated in the said transactions and may have received funds in the form of profits or otherwise, including the profits of upwards of $500,000 from the sale of the original issue of bond certificates.

These allegations are conclusions, based upon the allegations hereinbefore considered, and state no independent cause of action. My conclusion is that the complaint fails to state a cause of action against the moving defendants, and the motions to dismiss accordingly are granted.